No. 24-1212

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

CELLCO PARTNERSHIP, doing business as Verizon Wireless,
*Plaintiff-Appellee,*

v.

CITY OF MILWAUKEE and JERREL KRUSCHKE,
*Defendants,*

and

DEER DISTRICT LLC,
*Intervening Defendant-Appellant.*

---

Appeal from the United States District Court for the
Eastern District of Wisconsin, Case No. 2:23-cv-01581-BHL
The Honorable Brett H. Ludwig, Presiding

---

## BRIEF OF PLAINTIFF-APPELLEE CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS

---

Joseph S. Goode
John W. Halpin
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003

Scott H. Angstreich
Jimmy A. Ruck
  *Counsel of Record*
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Cellco Partnership
d/b/a Verizon Wireless*

May 17, 2024

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1212

Short Caption: Cellco Partnership v. Deer District LLC, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Cellco Partnership doing business as Verizon Wireless

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.; Laffey, Leitner & Goode LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ James A. Ruck    Date: 5/17/2024

Attorney's Printed Name: James A. Ruck

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address: Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036

Phone Number: (202) 326-7911    Fax Number: (202) 326-7999

E-Mail Address: jruck@kellogghansen.com

* Cellco's three partners are Bell Atlantic Mobile Systems LLC, GTE Wireless LLC, and Verizon Americas LLC.    rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1212

Short Caption: Cellco Partnership v. Deer District LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Cellco Partnership doing business as Verizon Wireless

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.; Laffey, Leitner & Goode LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Scott H. Angstreich    Date: 5/17/2024

Attorney's Printed Name: Scott H. Angstreich

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036

Phone Number: (202) 326-7959    Fax Number: (202) 326-7999

E-Mail Address: sangstreich@kellogghansen.com

* Cellco's three partners are Bell Atlantic Mobile Systems LLC, GTE Wireless LLC, and Verizon Americas LLC.

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1212

Short Caption: Cellco Partnership v. Deer District LLC, et al.

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Cellco Partnership doing business as Verizon Wireless

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.; Laffey, Leitner & Goode LLC

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Joseph S. Goode　　　　Date: 5/17/2024

Attorney's Printed Name: Joseph S. Goode

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** [ ]　**No** [✓]

Address: Laffey, Leitner & Goode LLC, 325 E. Chicago Street, Suite 200, Milwaukee, WI 53202

Phone Number: (414) 312-7181　　　　Fax Number: (414) 312-7089

E-Mail Address: jgoode@llgmke.com

* Cellco's three partners are Bell Atlantic Mobile Systems LLC, GTE Wireless LLC, and Verizon Americas LLC.`　　　rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1212

Short Caption: Cellco Partnership v. Deer District LLC, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Cellco Partnership doing business as Verizon Wireless

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.; Laffey, Leitner & Goode LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Verizon Communications Inc. indirectly owns 100% of Cellco Partnership*

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ John W. Halpin    Date: 5/17/2024

Attorney's Printed Name: John W. Halpin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Laffey, Leitner & Goode LLC, 325 E. Chicago Street, Suite 200, Milwaukee, WI 53202

Phone Number: (414) 312-7261    Fax Number: (414) 312-7089

E-Mail Address: jhalpin@llgmke.com

\* Cellco's three partners are Bell Atlantic Mobile Systems LLC, GTE Wireless LLC, and Verizon Americas LLC.    rev. 12/19 AK

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENTS ............................................i

TABLE OF AUTHORITIES ..................................................................vii

PRELIMINARY STATEMENT .................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF THE ISSUES ...............................................................3

STATEMENT OF THE CASE ...................................................................3

    A.    Verizon Sought To Address a Significant Wireless Coverage Gap Ahead of the 2024 Republican National Convention ............................................................................3

    B.    The City Denied Six of Verizon's Permit Applications ...........6

    C.    Verizon Challenges the City's Denials, and Deer District Intervenes Just Before a Trial on the Merits ...........8

    D.    The District Court Held That the City's Denials Violated Federal and State Law Following a Trial on the Merits ............................................................................10

    E.    Events Following the District Court's Ruling .......................14

SUMMARY OF ARGUMENT .................................................................15

STANDARD OF REVIEW......................................................................17

ARGUMENT ..........................................................................................18

I.    The District Court's Unchallenged Ruling That Federal Law Preempts the City's Permit Denials Precludes Deer District's Arguments on Appeal......................................................18

II.   The District Court Correctly Held That the Public Plaza
      Has Always Been and Remains a Right-of-Way, in Which
      the City Has the Authority To Grant Small Cell Permits ............23

      A.   The Public Plaza Was a Right-of-Way Before the Lease ..... 23

      B.   The Lease Did Not Change the Status of the Public
           Plaza, Which Remained a Public Right-of-Way ................... 25

           1.   The District Court Correctly Found That the
                Lease Conveyed Only the Use of a Right-of-Way........ 26

           2.   Deer District's Contrary Interpretation of the
                Lease Lacks Merit........................................................ 29

      C.   Wisconsin's Small Cell Statute Did Not Alter Deer
           District's Property Rights Because the Public Plaza
           Was Already a Right-of-Way ................................................. 33

           1.   The District Court Correctly Found That the
                Public Plaza Fits Within the Small Cell Statute's
                Right-of-Way Definition................................................ 33

           2.   Deer District's Argument That the Small Cell
                Statute Altered Its Rights Is Premised on Its
                Misinterpretation of the Lease.................................... 36

           3.   The Court Need Not Resolve Whether the Small
                Cell Statute's Definition of Right-of-Way Is
                Narrower Than the Common-Law Definition ............. 37

           4.   Deer District Waived Its Argument Based on
                Section 229.461, Which Lacks Merit............................ 38

CONCLUSION ........................................................................................ 39

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## CASES

*ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054
(7th Cir. 2019)...................................................................... 17

*Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970
(7th Cir. 2019)............................................................ 18, 36, 38

*Fuchsgruber v. Custom Accessories, Inc.*, 628 N.W.2d 833
(Wis. 2001) ....................................................................... 37, 38

*Hortman v. Otis Erecting Co.*, 322 N.W.2d 482 (Wis. 1982)................... 26

*Ill. Liberty PAC v. Madigan*, 904 F.3d 463 (7th Cir. 2018) ................... 17

*Kreuziger v. Milwaukee Cnty.*, 60 F.4th 391 (7th Cir. 2023) ................. 36

*MBS–Certified Pub. Accts., LLC v. Wis. Bell, Inc.*,
809 N.W.2d 857 (Wis. 2012)............................................ 38

*MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*,
864 N.W.2d 83 (Wis. 2015)............................................... 26

*Nat'l Tower, LLC v. Plainville Zoning Bd.*, 297 F.3d 14
(1st Cir. 2002) .................................................................. 22

*Ogden Fire Co. No. 1 v. Upper Chichester Twp.*,
504 F.3d 370 (3d Cir. 2007)..................................... 20, 21, 22

*Parsons v. Associated Banc-Corp.*, 893 N.W.2d 212
(Wis. 2017) ........................................................................ 28

*PrimeCo Pers. Commc'ns, Ltd. P'ship v. City of Mequon*,
352 F.3d 1147 (7th Cir. 2003) .......................................... 10

*Quinn v. Gates*, 575 F.3d 651 (7th Cir. 2009)......................................... 39

*State v. Rector*, 990 N.W.2d 213 (Wis. 2023) ......................................... 35

vii

*T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*,
    691 F.3d 794 (6th Cir. 2012) .................................................. 21, 22

*United States v. Miller*, 883 F.3d 998 (7th Cir. 2018) ............................ 17

## STATUTES AND RULES

47 U.S.C. § 332 ................................................................................. 18

47 U.S.C. § 332(c)(7) ....................................................................... 20

47 U.S.C. § 332(c)(7)(B)(i) ................................................................ 9

47 U.S.C. § 332(c)(7)(B)(ii) ........................................................ 11, 18

47 U.S.C. § 332(c)(7)(B)(iii) ........................................... 7, 9, 10, 11, 19, 20

Wis. Stat. § 62.71(2)(*l*) ..................................................................... 34

Wis. Stat. § 66.0414 ......................................................................... 33

Wis. Stat. § 66.0414(1)(t) ................................................................ 34

Wis. Stat. § 66.0414(2)(e)1 .............................................................. 35

Wis. Stat. § 66.0414(3)(c)1.d. ............................................................ 7

Wis. Stat. § 66.0414(3)(c)1.h ..................................................... 9, 13, 35

Wis. Stat. § 66.0414(8) .................................................................... 36

Wis. Stat. § 66.0905 .................................................................. 23, 24

Wis. Stat. § 66.1003 ........................................................................ 24

Wis. Stat. § 229.461 ................................................................... 33, 38

Wis. Stat. § 229.461(3)(c) ........................................................... 38, 39

Wis. Stat. § 236.43 ................................................................ 24

Wis. Stat. § 340.01(58) ......................................................... 34

City of Milwaukee Code § 113-21 ......................................... 23

Fed. R. Civ. P. 65(a)(2) .......................................................... 10

7th Cir. R. 28(b) ...................................................................... 2

**OTHER MATERIALS**

Tom Daykin, *Bucks Want Milwaukee to grant Deer District plaza control. That would block Verizon*, Milwaukee J. Sentinel (Mar. 6, 2024), *available at* https://finance.yahoo.com/news/bucks-want-milwaukee-grant-deer-110714133.html ............................................. 14

Declaratory Ruling and Third Report and Order, *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088 (2018) ........................................ 7, 19, 20

# PRELIMINARY STATEMENT

Anticipating large crowds at the July 2024 Republican National Convention in Milwaukee, Verizon sought permits to bolster its network coverage on the Public Plaza outside Fiserv Forum (home of the Milwaukee Bucks), which the City denied. The district court held that federal law preempted the City's permit denials because substantial evidence did not support the City's two timely raised reasons for the denials, and the City's untimely raised reason — that the City had given up its permitting authority in a lease — was time-barred and meritless. The City did not appeal. Only a sublessee, Deer District, appealed. But Deer District does not challenge the district court's application of federal law, which is a sufficient basis to affirm. Deer District, like the City, cannot defend the permit denials based on the City's lease, which was not a reason included in the City's timely issued denial.

Deer District's challenges to the district court's interpretation of the City's lease also fail on the merits. The Public Plaza was a right-of-way before the City leased it to the Wisconsin Center District (which subleased it to Deer District). The lease did not alter the status of the

Public Plaza as a right-of-way. And it is also a right-of-way under Wisconsin's Small Cell Statute, which defines the term to include "other similar property" to a sidewalk. Indeed, the Public Plaza is designed for pedestrian use, just like a sidewalk — it is simply a very large sidewalk. Therefore, the Small Cell Statute did not alter Deer District's property rights, no Taking occurred, and no question exists to certify to the Wisconsin Supreme Court.

As the district court found, following a trial, the City's timely reasons for denying Verizon's permit applications were a mere pretext. The City's real reason was its desire to assist Deer District's effort to force Verizon to pay more than $10 million to Deer District for an inferior solution to Verizon's network coverage needs. Following the district court's ruling, the City issued the permits, and Verizon has installed its small cell facilities, which are now operational. Nothing Deer District raises on appeal provides any basis to declare Verizon's permits invalid. This Court should affirm.

## JURISDICTIONAL STATEMENT

Appellee states, pursuant to Circuit Rule 28(b), that the jurisdictional summary in appellant's brief is complete and correct.

## STATEMENT OF THE ISSUES

1.    Does the district court's unchallenged ruling that the federal Communications Act preempts the City's permit denials preclude Deer District from relying on the City's untimely raised ground for denial as a basis to rescind the permits?

2.    Did the district court correctly hold that the Public Plaza is a right-of-way, in which the City has authority to grant permits for small cell wireless facilities?

## STATEMENT OF THE CASE

A.    *Verizon Sought To Address a Significant Wireless Coverage Gap Ahead of the 2024 Republican National Convention*

In June 2021, large crowds gathered outside Fiserv Forum to cheer on the Milwaukee Bucks in the NBA Finals. Decision and Order at 3 (App. 3). The crowds strained Verizon's existing cellular network. *Id.* Customers could not reliably access the internet, send or receive text messages, or make or answer voice calls. Schwingle Decl. ¶ 4 (Supp. App. 53). Even law enforcement and first responders — who have priority access to Verizon's wireless network — had difficulty connecting. *Id.*

Anticipating similarly large crowds during the July 2024 Republican National Convention, Verizon searched for ways to bolster its wireless coverage in the Deer District Public Plaza ("Public Plaza") outside Fiserv Forum. Decision and Order at 3 (App. 3). Verizon determined that installing "small cells" — short-range mobile cell sites that enhance network capacity in high-traffic and dense urban areas — offered the best solution to the problem. Schwingle Decl. ¶¶ 6, 8-9 (Supp. App. 54-55); Stavros Decl. ¶ 5 (Supp. App. 47). Small cells consist of antennae roughly two to three feet tall and equipment boxes approximately three cubic feet in volume. Schwingle Decl. ¶ 7 (Supp. App. 54). Service providers can locate them on existing utility poles or on standalone poles that look like existing utility poles. *Id.*

Verizon devoted "substantial time" in 2023 scouting locations in and around the Public Plaza that could accommodate these small cells. Decision and Order at 3 (App. 3). Verizon's radio frequency engineers concluded that four small cells placed in and around the Public Plaza would adequately address the projected demand. Schwingle Decl. ¶ 9 (Supp. App. 55); Stavros Decl. ¶ 5 (Supp. App. 47).

Verizon explored collocating the small cells on existing utility poles but found that the existing poles were either unsuitable or unavailable for collocation. Stavros Decl. ¶ 7 (Supp. App. 48). Verizon also evaluated using a distributed antenna system ("DAS") to meet its network needs.[1] A vendor working for Appellant Deer District, DGP, proposed to construct a DAS in the Public Plaza. 1/24/24 Tr. 130:8-11 (Supp. App. 82). Verizon met with DGP, but determined that DGP's DAS would not meet Verizon's needs. *Id.* at 130:24-131:2; 133:18-23 (Supp. App. 82-83, 85). Among other things, DGP's DAS could interfere with Verizon's network, which Verizon told DGP in early 2023. *Id.* at 131:5-8; 133:18-23; 137:8-11 (Supp. App. 83, 85, 89). DGP's updated designs failed to resolve the interference issues. *Id.* at 137:12-17 (Supp. App. 89). Verizon also concluded that small cells would be superior technologically to a DAS. *Id.* at 134:11-15; 135:1-3; 136:23-137:1 (Supp. App. 86, 87, 88-89). And Deer District's DAS was cost-prohibitive: a $10 million construction charge plus $10,000 per month increasing 3.5% per year. *Id.* at 131:12-15; 132:14-20 (Supp. App. 83, 84). For all these

---

[1] A DAS differs from small cells. It encompasses multiple antennas that are connected to one base station and that broadcast the same signal to a broad area. 1/24/24 Tr. 129:9-14 (Supp. App. 81).

reasons, Verizon informed DGP that it was rejecting the DAS option. *Id.* at 132:20-23 (Supp. App. 84).

Verizon concluded its best (if not only) option was to construct its own small cell poles on the Public Plaza. Decision and Order at 4 (App. 4); Stavros Decl. ¶ 7 (Supp. App. 48). Because Verizon would use custom poles designed to match the existing utility poles in the Public Plaza, it required extra lead time to special order the poles and other equipment. Decision and Order at 4 (App. 4). Therefore, on August 3, 2023, Verizon submitted eight permit applications for its four proposed locations: one north of the Fiserv Forum and three east of the Fiserv Forum within the Public Plaza. Stavros Decl. ¶ 7 (Supp. App. 48).[2] Deer District knew of Verizon's discussions with the City concerning its permit applications as early as February 2023. Sneathern Decl. ¶ 4 (Supp. App. 65).

B.    *The City Denied Six of Verizon's Permit Applications*

Federal and state law imposed a 90-day deadline (or "shot clock") — November 1, 2023 — for the City to approve or deny Verizon's permit

_____

[2] Each location required two permits — a pole-and-anchor permit and an excavation permit. Decision and Order at 5 (App. 5).

applications. Decision and Order at 5 (App. 5).[3] Federal law also required that the City provide any denial "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

On October 24, 2023, the City approved Verizon's permit applications for the pole and antenna located north of the Fiserv Forum, which was outside the Public Plaza. Decision and Order at 5 (App. 5); Stavros Decl. ¶ 7 (Supp. App. 48). But two days later, the City denied Verizon's six other permit applications by email. Opseth Decl. ¶¶ 8-10 (Supp. App. 40-45).

The denials stated that each application was "not approved" and directed Verizon to log into a City website to view the City's rationale. *Id.* The City's entire explanation was as follows:

> Poles are too close to existing poles, and ". . . may not obstruct or hinder travel . . . on or around the right-of-way. . . .", per s. 66.0414(2)(e)1 of the State statutes.
>
> Aesthetic requirement of "unsightly or out-of-character deployments" per 66.[0414](3)(c)4.a of the State statutes.

---

[3] Declaratory Ruling and Third Report and Order, *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶ 105 (2018) ("*Wireless Broadband Order*"); Wis. Stat. § 66.0414(3)(c)1.d.

Decision and Order at 5 (App. 5).

Deer District's counsel emailed the City the following day, asserting that the City's 2016 lease of an area including the Public Plaza to the Wisconsin Center District ("WCD")[4] precluded the City from granting Verizon permits to install small cells in the Public Plaza. *Id.* at 3, 5 (App. 3, 5). On November 10, 2023 — and nine days after the 90-day shot clock had expired — the City sent Verizon a letter offering this additional basis for its permit denials. *Id.* at 6 (App. 6). The City asserted that it lacked "authority to grant third-party permits for small wireless facility pole installations within the 4th Street Pedestrian Mall," because it had contracted away this authority through its lease with the Wisconsin Center District. Nov. 10 Letter (Supp. App. 1).

C. *Verizon Challenges the City's Denials, and Deer District Intervenes Just Before a Trial on the Merits*

Verizon moved swiftly to challenge the City's permit denials. On November 24, 2023, Verizon filed suit against the City of Milwaukee and its Commissioner of Public Works, alleging that federal law —

---

[4] Wisconsin Center District is a unit of government under Wisconsin law. *See* Decision and Order at 3 (App. 3). In 2016, the Wisconsin Center District subleased the Public Plaza to Deer District. *See generally* Lease (Supp. App. 3-36).

specifically, 47 U.S.C. § 332(c)(7)(B)(i), (iii) — preempted the City's denials. Decision and Order at 7 (App. 7). Verizon also alleged that the City's denials violated Wisconsin law, including Wis. Stat. § 66.0414(3)(c)1.h. *Id.* at 16 (App. 16). Given the limited time before the Republican National Convention started and the need for construction of custom utility poles, Verizon sought review on an expedited basis and moved for a preliminary injunction. Deer District learned of Verizon's lawsuit no later than December 7, 2023. Sneathern Decl. ¶ 7 (Supp. App. 66).

On January 19, 2024, the district court held an initial hearing on Verizon's motion for preliminary injunction. Three days later — and nearly a year after learning of Verizon's plans to improve its coverage in the Public Plaza — Deer District moved to intervene and filed a proposed motion to dismiss and proposed opposition to Verizon's motion. *See* ECF Nos. 25-27. The district court granted Deer District's intervention motion and docketed its filings, despite observing that Deer District knew about the lawsuit for more than a month yet failed "to intervene immediately." 1/24/24 Tr. 73:6-13; 75:6-7; 112:13-23 (Supp. App. 72, 74, 77). Then, with the consent of all parties, the district court

advanced the case to a full trial on the merits under Federal Rule of Civil Procedure 65(a)(2). Decision and Order at 2 (App. 2). The court heard argument from Verizon's, the City's, and Deer District's counsel, as well as witness testimony, and reviewed a number of declarations and exhibits. *Id.*

> D. *The District Court Held That the City's Denials Violated Federal and State Law Following a Trial on the Merits*

The district court's January 29, 2024 Decision and Order ruled for Verizon, holding that the City's permit denials violated both federal and state law. *Id.* As to federal law, the court found that the City's two terse grounds for denial were not supported by substantial evidence. *Id.* at 7-10 (App. 7-10) (citing 47 U.S.C. § 332(c)(7)(B)(iii) and *PrimeCo Pers. Commc'ns, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147 (7th Cir. 2003)). The City's denials did "not cite any evidence" and offered "no reasoning" that connected its denials to "anything in the record." *Id.* at 10-11 (App. 10-11). The court also found the City's two timely justifications were "hard to square with the record," noting that the applications the City denied were for poles "designed . . . to match those already in the Plaza"

and were only "one foot" closer to existing poles than the applications the City granted. *Id.* at 11 (App. 11).[5]

The court also noted that the City's belated assertion that it lacked authority to grant permits in the Public Plaza suggested that the aesthetic and spacing reasons the City gave "were not the real reasons City officials decided to deny Verizon's applications." *Id.* at 12 (App. 12). Instead, "credible evidence confirms that the City actually denied the applications to assist a private entity, Deer District, in gaining Verizon as a customer for the DAS project being developed by Deer District and [DGP]." *Id.*; *see also id.* at 13 (App. 13) (finding the initial reasons were "false and a mere pretense, hiding the City's true motives").

The district court also found the City's "after-the-fact attempt to craft a justification" for its permit denials was "untimely and irrelevant," because it came after the 90-day shot clock expired. *Id.* at 12 (App. 12). But the court also rejected the City's belated justification on the merits. *See id.* at 12-16 (App. 12-16). It found that the City, in its

_____

[5] Because the district court held that the City's denials were not supported by substantial evidence and thus violated § 332(c)(7)(B)(iii), it did not reach Verizon's claim that the City's denials also violated § 332(c)(7)(B)(ii) by effectively prohibiting Verizon from providing service. Decision and Order at 7 n.3 (App. 7).

lease with the Wisconsin Center District, "retain[ed] rights" over the Public Plaza, including the ability to grant permits for small cell wireless facilities. *Id.* at 15 (App. 15). The lease gave Wisconsin Center District only a non-exclusive "right . . . to place or install Plaza Improvements on the Premises," "[s]ubject to compliance with applicable laws and . . . public access rights." *Id.*

The court found further that the Public Plaza is a right-of-way under state law and that the lease did not alter that status. *Id.* at 13-14 (App. 13-14). The court observed that, in the lease, Wisconsin Center District acknowledged "that the Premises are a Pedestrian Mall that is held by City as public right-of-way subject to regulation." *Id.* at 14 (App. 14) (quoting Lease § 4E(1) (Supp. App. 11)). The court also noted that the City's counsel had admitted that the Public Plaza was "technically" a right-of-way and that the City's November 10 letter to Verizon also described the Public Plaza as a right-of-way. *Id.* The district court derided as "extreme hairsplitting" the City's and Deer District's argument that the Public Plaza is a "right-of-way" for some purposes, but not for purposes of the City's permitting authority. *Id.* As the court noted, "[d]espite being pressed by the Court, neither the City nor Deer

District have offered any factual or legal support for this remarkable proposition." *Id.* at 15 (App. 15).

In sum, the court found that the City's and Deer District's assertion that the Public Plaza is *not* a right-of-way for permitting purposes "disregards the century-old definition of a right-of-way, the [small cell] statute's inclusion of 'or other similar property,' and is completely unsupported by legal authority to the contrary." *Id.* at 16 (App. 16).[6]

Finally, the court found that the City's permit denials violate Wisconsin law, under which a municipality "*shall approve* a [small wireless] permit application" unless the applicant failed to meet certain "applicable codes or ordinance standards." *Id.* at 16-17 (App. 16-17) (citing Wis. Stat. § 66.0414(3)(c)1.h). After finding that "proper connectivity would clearly benefit customers," that Verizon "demonstrated it would suffer irreparable reputational harm if unable

---

[6] The court held in the alternative that, even if the City had contracted away its permitting authority in the lease with Wisconsin Center District (which the court found it did not), state law prohibited the City from giving away its inherent power to regulate utilities to a private entity like Deer District. Decision and Order at 15-16 (App. 15-16).

to provide appropriate connectivity," and that "the City's conduct in this case suggests gamesmanship and backroom dealing to benefit a private entity, Deer District," the district court ordered the City to issue Verizon the six denied permits. *Id.* at 18 (App. 18).

E.    *Events Following the District Court's Ruling*

On February 1, 2024, the City issued Verizon the six permits. The City also elected not to appeal the court's decision. Deer District did appeal but did not seek a stay pending appeal.[7]

With the permits in hand, Verizon ordered the custom poles and small cell equipment. Verizon has installed the poles and equipment, and the small cells are now operational.

---

[7] Instead, following the district court's order, a different affiliate of the Milwaukee Bucks asked the City for a formal street vacation of North Phillips Avenue, which would have granted Deer District full ownership of the Public Plaza. Those efforts collapsed after public scrutiny. *See* Tom Daykin, *Bucks Want Milwaukee to grant Deer District plaza control. That would block Verizon*, Milwaukee J. Sentinel (Mar. 6, 2024), *available at* https://finance.yahoo.com/news/bucks-want-milwaukee-grant-deer-110714133.html.

## SUMMARY OF ARGUMENT

I.     The district court's ruling that the Communications Act preempts the City's permit denials, which the City did not appeal and Deer District does not challenge, forecloses Deer District's arguments on appeal. The district court held that the City's contention that the lease of the Public Plaza deprived it of authority to grant the permits was "untimely and irrelevant" because it came after the time frame federal law mandates for a written decision. Decision and Order at 12 (App. 12). In analogous cases, the Third, Sixth, and First Circuits rejected attempts to defend permit denials on grounds not found in the permitting authority's timely issued denial.

II.    The district court correctly found that the Public Plaza has always been and remains a right-of-way, in which the City has the authority to grant small cell permits. The City never forfeited its authority to grant permits for the construction of wireless facilities. And neither the lease nor any other provision of Wisconsin law conveyed to Deer District the exclusive right to allow the construction of wireless facilities on the Public Plaza.

**A.**     First, before the lease, the Public Plaza was a right-of-way. This is unchallenged. Both the City and Deer District admitted this fact during the trial.

**B.**     Nothing in the City's lease with Wisconsin Center District changed the status of the Public Plaza: it was and remains a right-of-way. As the district court correctly found, the City did not contract away its authority to grant permits for small cell facilities in the Public Plaza. The plain terms of the lease include the Wisconsin Center District's express acknowledgment that the Public Plaza is held by the City as a right-of-way. Other lease provisions similarly confirm that the leased Public Plaza remains a right-of-way. Deer District's assertion that it holds an exclusive right to control all commercial activity and improvements in the Public Plaza rests on a mistaken reading of the lease's provisions.

**C.**     Finally, Wisconsin's Small Cell Statute did not alter Deer District's property rights, because the Public Plaza was already a right-of-way. And as the district court correctly found, the Public Plaza is also "clearly a right-of-way" under Wisconsin's Small Cell Statute. Decision and Order at 14 (App. 14). The Public Plaza is designed for pedestrian

use, just like a sidewalk — it is simply a very large sidewalk. Because the Public Plaza is a right-of-way under both the common-law definition of a right-of-way and the "other similar property" language in Wisconsin's Small Cell Statute, the district court correctly found that the City's permit denials violated the Small Cell Statute. Finally, because the Small Cell Statute did not alter any rights the lease conveyed, no Taking occurred, and no reason exists to certify a question about the meaning of the Small Cell Statute to the Wisconsin Supreme Court.

## STANDARD OF REVIEW

This Court reviews a district court's interpretations of a contract and of a statute *de novo*. *See ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1076 (7th Cir. 2019) (contract); *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018) (statute). The Court reviews the district court's factual findings, which Deer District asserts (at 21) that it "does not challenge," for clear error, a "highly deferential" standard. *Ill. Liberty PAC v. Madigan*, 904 F.3d 463, 475 (7th Cir. 2018).

This Court does not review legal arguments that an appellant never raised before the district court. An appellant "waives the ability

to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 974 (7th Cir. 2019).

## ARGUMENT

### I. The District Court's Unchallenged Ruling That Federal Law Preempts the City's Permit Denials Precludes Deer District's Arguments on Appeal

In the Communications Act, Congress struck a balance designed to facilitate the nationwide deployment of wireless communications networks. Congress preserved local authority subject to limitations. A zoning authority "shall act" on an application to "construct . . . wireless service facilities within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). And "[a]ny decision by a State or local government . . . to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii). In addition, the FCC, exercising its authority to administer § 332, has promulgated rules interpreting "reasonable period of time" to require zoning

authorities to issue their written decisions on small cell permit applications within 90 days. *Wireless Broadband Order* ¶ 105.

The City did not appeal — and Deer District does not challenge — the district court's conclusion that the City's October 26, 2023 denials were not "supported by substantial evidence," as the Communications Act requires. 47 U.S.C. § 332(c)(7)(B)(iii). The court found that the City did "not cite any evidence" and offered "no reasoning" — and that "credible evidence" showed that the reasons the City gave "were false and a mere pretense, hiding the City's true motives." Decision and Order at 10, 12-13 (App. 10, 12-13). Instead, the court found that the City's actual reason for denying Verizon's permit applications — which it did not reference in its denials — was "to assist a private entity, Deer District, in gaining Verizon as a customer for the DAS project," for which Deer District's affiliate sought more than $10 million from Verizon. *Id.* at 12 (App. 12).

Deer District also does not challenge the district court's finding that the City's "after-the-fact" contention that its lease with Wisconsin Center District deprived it of authority to grant the permits was "untimely and irrelevant," because it came after the federal 90-day shot

clock expired. *Id.* As the court explained, "[f]or this reason alone, the City cannot save its bacon by asserting it lacks authority to issue the permits." *Id.*

Nevertheless, Deer District argues that *it* can rely on that same belated justification to defend the City's denials of Verizon's permit applications. Validating this untimely justification would upend Congress's carefully designed regime in § 332 and the shot clock the FCC established using its authority to implement that regime. The 90-day period provides applicants with the "significant benefit of regulatory certainty." *Wireless Broadband Order* ¶ 110. That certainty would disappear if third parties like Deer District could revive arguments that a zoning authority waived by failing to include them in its timely issued decision "in writing" based on "substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

The Third Circuit rejected a comparable effort to make "an end run around the requirements of" § 332(c)(7) and thereby "subvert a federal policy." *Ogden Fire Co. No. 1 v. Upper Chichester Twp.*, 504 F.3d 370, 396 (3d Cir. 2007). In *Ogden Fire*, as here, the district court found — and the Third Circuit agreed — that the permit denial "was not

supported by substantial evidence in the written record." *Id.* at 387; *see also id.* at 389 (finding that the Township had supported its denial with "conclusory statements insufficiently buttressed by generalized notions offered by poorly qualified witnesses"). After the district court found that federal law preempted the Township's denial, a different government actor sought to interpose a new obstacle — which was not a basis for the permit denial — to the construction of the new wireless facilities. *Id.* at 395. The district court "ordered the Township to issue the appropriate permits for the building of the radio tower and related radio equipment," and the Third Circuit affirmed that order, finding that "order[ing] the issuance of the building permits" was a "proper[]" remedy for the Township's violation of the Communications Act's substantial evidence requirement. *Id.* at 395-96.

The Sixth Circuit reached a similar result in *T-Mobile Central, LLC v. Charter Township of West Bloomfield*, 691 F.3d 794 (6th Cir. 2012). As in this case and *Ogden Fire*, the district court held that the Township's grounds for denying T-Mobile's permit application were not supported by substantial evidence. *Id.* at 798. The Sixth Circuit agreed that the "five stated reasons for denial . . . were not supported by

substantial evidence." *Id.* at 805. The court held further that, because "the Township's actions violated the Telecommunications Act," the court need "not address the [Township's] state-law claim" that a provision of state law — which the Township did not cite as a reason for denial — justified its permit denial. *Id.* at 809. And the First Circuit, like the Third and Sixth Circuits, has also rejected an attempt to defend a permit denial on grounds not found in the permitting authority's issued denial. In *National Tower, LLC v. Plainville Zoning Board*, the First Circuit stated that it would "not uphold a board's denial of a permit on grounds that it did not present in its written decision." 297 F.3d 14, 22 (1st Cir. 2002). Applying that principle, *National Tower* first rejected the reasons the zoning board provided to the applicant for the denial. *Id.* at 23. Then the First Circuit declined to consider "a different rationale" that the zoning board failed to timely raise in its denial decision. *Id.* at 24.

Deer District has no more ability than the townships in *Ogden Fire* and *T-Mobile or* the zoning board in *National Tower* — or the City here if it had appealed — to use untimely raised grounds to support a permit denial. To the extent Deer District now claims it suffered harm

from the City's failure to timely raise the argument that the lease deprived it of permit-granting authority, it would have (at most) a claim for monetary damages against the City. But as explained below, Deer District does not have such a claim — the Public Plaza was and is a right-of-way, and the City had the authority (indeed, the obligation) to grant the permits enabling Verizon to provide reliable service to crowds gathering in the Public Plaza.

## II. The District Court Correctly Held That the Public Plaza Has Always Been and Remains a Right-of-Way, in Which the City Has the Authority To Grant Small Cell Permits

### A. *The Public Plaza Was a Right-of-Way Before the Lease*

At its inception, the Public Plaza was a right-of-way. In 2016, the City — acting under "Section 66.0905, Wisconsin Statutes" — established a "pedestrian mall" (the Public Plaza) in "an area previously used for vehicular thoroughfare" in front of what would become Fiserv Forum. City of Milwaukee Code § 113-21. Section 66.0905 authorizes municipalities to create a pedestrian mall from "any part of a street, road or public way or any part of a street, road or public way wholly within" a municipality's jurisdiction. Wis. Stat. § 66.0905. The "[c]reation of a pedestrian mall" using this authority "*does not*

constitute a discontinuance or vacation of the street, road or public way." *Id.* (emphasis added).[8]

Both the City and Deer District admitted at trial that the Public Plaza was a right-of-way before the lease. *See* 1/24/24 Tr. 170:25-171:4 (Supp. App. 94-95) (City counsel); *id.* at 182:9-14 (Supp. App. 102) (Deer District counsel).

The district court thus correctly found that the "Plaza was built with the express intention of being a gathering place — clearly within the definition of an easement for public use" under Wisconsin law. Decision and Order at 14 (App. 14). As the court noted, the lease between the City and Wisconsin Center District — executed after the City created the Public Plaza — affirmed that the Public Plaza was a right-of-way. In the lease's "Recitals," the City and Wisconsin Center District agreed that the City "holds the right-of-way known as North 4th Street" and "commonly known as the 'North 4th Street Pedestrian

---

[8] Wis. Stat. § 66.0905 identifies Sections 66.1003 and 236.43 as means by which a public way can be discontinued or vacated. Deer District does not contend that the City ever acted under either section to do so as to the Public Plaza. In fact, the City admitted before the district court that it "could have vacated" the right-of-way but never did. 1/24/24 Tr. 193:2-5 (Supp. App. 106).

Mall.'" Lease, Recitals § C (Supp. App. 5). The present tense "holds" recognizes that the Public Plaza was a right-of-way at the time of the lease.

### B. The Lease Did Not Change the Status of the Public Plaza, Which Remained a Public Right-of-Way

As the district court correctly found, nothing in the City's lease with Wisconsin Center District changed the status of the Public Plaza; it was and remains a right-of-way. Decision and Order at 15 (App. 15). Below, counsel for the City and Deer District each admitted that the leased Public Plaza was still a right-of-way for "some purposes," though they argued that it was *not* a right-of-way for purposes of the City's authority to grant Verizon's permits. *Id.* at 14 (App. 14); 1/24/24 Tr. 168:1-24; 177:9-20 (Supp. App. 92, 97). The court properly rejected this "extreme hairsplitting," noting that, when "pressed by the Court" at the hearing, neither the City nor Deer District "offered any factual or legal support for this remarkable position." Decision and Order at 14-15 (App. 14-15). Deer District has not filled that gap before this Court.

### 1. The District Court Correctly Found That the Lease Conveyed Only the Use of a Right-of-Way

The district court examined the terms of the lease, reviewed a number of exhibits, heard testimony from witnesses, and argument from counsel for Verizon, the City, and Deer District before concluding that the City had not contracted away its authority to grant permits for small cell facilities in the Public Plaza. The court correctly found instead that the lease "contemplates the City retaining rights over" the Public Plaza. Decision and Order at 15 (App. 15).

The plain terms of the lease support the district court's finding.[9] The lease "includes an express acknowledgement by the WCD 'that the Premises are a Pedestrian Mall that is *held by City as public right-of-way* subject to regulation.'" *Id.* at 14 (quoting Lease § 4E(1) (Supp. App. 11)) (emphasis added); *see also* Lease, Recitals § C, § 1L (Supp. App. 5, 7) (defining "Premises" as "the right-of-way . . . commonly known as the

---

[9] *See MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 864 N.W.2d 83, 94 (Wis. 2015) (explaining that, when the "terms of a contract are plain and unambiguous, we construe it as it stands"); *Hortman v. Otis Erecting Co.*, 322 N.W.2d 482, 485 (Wis. 1982) ("[T]he court has no right, by a process of interpretation, to relieve one [party to a contract] from any disadvantageous terms which he has actually made.").

'North 4th Street Pedestrian Mall'"). In short, in conveying rights to Wisconsin Center District, the City did not change the status of the Public Plaza: it remained a right-of-way. As a sublessee, Deer District cannot hold greater rights than Wisconsin Center District had as the lessee. The lease conforms to this basic legal principle. It states that, in "the event that the Premises" were "subleased" to Deer District (referred to in the lease as ArenaCo), the sublease would "incorporate all of the terms of this Lease," and Deer District would "take on all obligations, responsibilities, rights and liabilities of WCD under this Lease solely with respect to the Premises." Lease § 2C (Supp. App. 8).

Other language in the lease supports the district court's conclusion. As that court observed, the lease uses specific language when conveying an "exclusive" right to Wisconsin Center District, but it did not use this language for Public Plaza Improvements. Decision and Order at 15 (App. 15). For example, Section 6 grants Wisconsin Center District "the exclusive right to allow commercial vending and similar activities," like "kiosks, food trucks, push carts," in the Public Plaza. Lease § 6 (Supp. App. 12). In contrast, Section 4D provides Wisconsin Center District "the right" — but not "the exclusive right" — "to place or

install Plaza Improvements on the Premises." *Id.* § 4D (Supp. App. 11).

The district court correctly concluded that the "right" to install

improvements the lease conveyed was not exclusive and so did *not*

preclude the City from "allowing others to install improvements" in the

Public Plaza. Decision and Order at 15 (App. 15); *see also Parsons v.*

*Associated Banc-Corp.*, 893 N.W.2d 212, 219 (Wis. 2017) ("[W]e must

acknowledge a[n] . . . interpretative presumption, namely the intuitive

presumption that 'different words have different meanings.'").

Nor are these the only lease provisions that make clear that the

City conveyed a right-of-way to Wisconsin Center District and did not

forfeit its authority to grant permits for small cell facilities within the

Public Plaza. Section 17A states that the Public Plaza is "property-tax

exempt," because "the Premises are held by City as *public right-of-way*."

Lease § 17A (Supp. App. 20) (emphasis added). That Section 17A goes

on to recognize that the Public Plaza might "subsequently" lose its

public right-of-way status and its tax exemption — in which case "WCD

shall be responsible for . . . such taxes," *id.* — confirms that the lease

did not change the Public Plaza's character as a right-of-way.

Other lease provisions further confirm that the leased Public Plaza remains a right-of-way. *See*, *e.g.*, *id.* § 15B (Supp. App. 19) (providing, in a subsection titled "Encumbrances," that "City retains the right to devote portions of the Premises for utilities . . . as described herein, and other easements necessary for public welfare and convenience"); *id.* § 22 (Supp. App. 23) (stating that the "sole relationship hereunder between WCD and City is merely that of tenant (WCD) and landlord (City)"). The lease grants Wisconsin Center District the right to charge fees for "Special Events" at the Public Plaza, such as concerts, sports-related activities, and rallies. *Id.* § 8B (Supp. App. 15). But absent from the lease is any provision giving Wisconsin Center District the right to charge fees to a service provider seeking to erect wireless facilities within the Public Plaza.

2. *Deer District's Contrary Interpretation of the Lease Lacks Merit*

Deer District repeatedly asserts (at 28, 33-36) that it has the "exclusive right to control commercial activity in the Plaza, and to make improvements in the Plaza." As shown above, while the lease conveys certain rights within the Public Plaza, it does not grant the broad exclusive rights Deer District claims. Deer District does not identify any

lease provision that deprives the City of its authority to grant permits for small wireless facilities in the Public Plaza, a right-of-way.

**Section 4E.** This section provides the clearest statement that, under the lease, the Public Plaza remains "a Pedestrian Mall that is held by City as public right-of-way." Lease § 4E(1) (Sup. App. 11). Deer District, however, asserts (at 36) that Section 4E "contextualize[s]" that unambiguous statement by going on to note that the Public Plaza already "contains publicly and privately-owned utility facilities," which those owners "have rights to access." Lease § 4E(1)-(2) (Supp. App. 11). Deer District misreads this language as granting a right of access to those utility owners, something that it says (at 36) would not be necessary if the Public Plaza is a right-of-way. But Section 4E does not grant those public and private utility owners any rights. Instead, it states that "WCD *acknowledges* that the owners of utility facilities . . . *have rights* to access their facilities." Lease § 4E(2) (Supp. App. 11) (emphases added). The lease's acknowledgement of those existing rights confirms that the Public Plaza is a right-of-way. Moreover, Section 4E notes that utility owners may "interfere" with Deer District's own use of

the Public Plaza, *id.* — undercutting Deer District's argument that the Public Plaza falls under its exclusive control.

**Sections 4C, 4D, and 6.** Deer District strings together these three provisions to argue (at 33-34) that, because the lease does not expressly grant the City the right to authorize additional utilities, only Deer District has those rights. Those provisions — taken alone or in combination — do not support the Deer District's conclusion.

To start, Section 6 does not give Deer District "all rights to use the Plaza subject only to the limitations in the Lease." Br. 33. Notably, Deer District does not quote Section 6. That section instead says that, "[s]ubject to the limits described above" — which include "compliance with all applicable federal, state and local laws, regulations and ordinances" — the Public Plaza "may be used for any purpose permitted by law." Lease § 6 (Supp. App. 12). That permissive authorization ("may be used") is not a grant of an exclusive right to use the Public Plaza. The only "exclusive right" Section 6 grants involves "allow[ing] commercial vending and similar activities." *Id.*[10]

---

[10] This provision explains that commercial vending and similar activities refers to "kiosks, food trucks, push carts" around Fiserv

Next, Section 4C does not give Deer District the "exclusive right to control 'any commercial activities or operations' in the Plaza." Br. 33. In fact, the phrase "exclusive right" does not appear in Section 4C. And the only "commercial activities or operations" that may occur only if Wisconsin Center District "expressly allow[s]" them are those "pedestrian and recreational uses" for which "members of the public" access the Public Plaza. Lease § 4C(1) (Supp. App. 10). Section 4E, not Section 4C, addresses utilities located in the Public Plaza — and that is also the section in which Wisconsin Center District "acknowledges that the Premises are a Pedestrian Mall that is held by City as public right-of-way." *Id.* § 4E(1) (Supp. App. 11).

Finally, Section 4D merely gives Wisconsin Center District the "right . . . to place or install Plaza Improvements" — a defined term that includes things like "bike share stations," "sculptures," and "gazebos." *Id.* §§ 1K, 4D (Supp. App. 7, 11). Verizon's wireless facilities are not "Plaza Improvements." And Section 4D does not grant Wisconsin Center District exclusive rights even as to bike share stations or gazebos. Deer

Forum. Lease § 6 (Supp. App. 12). Small wireless facilities do not fall within the limited scope of that exclusive grant of authority. *See supra* Part II.B.1.

District's Plaza Improvements must be "consistent with the Approved Plaza Plans" or be "approved by City's Common Council" — unauthorized Deer District Plaza Improvements "shall be removed at [its] sole cost." *Id.* § 4D (Supp. App. 11).[11]

### C. Wisconsin's Small Cell Statute Did Not Alter Deer District's Property Rights Because the Public Plaza Was Already a Right-of-Way

#### 1. The District Court Correctly Found That the Public Plaza Fits Within the Small Cell Statute's Right-of-Way Definition

Several years after the City entered the lease, Wisconsin enacted its Small Cell Statute, Wis. Stat. § 66.0414, to facilitate the deployment of small cell facilities. Contrary to Deer District's claims (at 33-36), that Statute had no impact on Deer District's rights as to the Public Plaza. As shown above, the Public Plaza was created as a right-of-way and retained that status under the lease. As the district court correctly

---

[11] Because the City did not contract away its authority to issue permits for wireless facilities in the Public Plaza, the Court need not reach the question of whether the City could have surrendered that authority by contract. The district court correctly held that it cannot. *See* Decision and Order at 15-16 (App. 15-16). Deer District agrees (at 36-37) that a municipality can do so only with "express legislative authority." But the statute it cites does not expressly authorize the City to give away its permitting authority — Deer District quotes no portion of the statute doing so because none exists. *See* Wis. Stat. § 229.461.

found, the Public Plaza is also "clearly a right-of-way" under the definition in the Small Cell Statute. Decision and Order at 14 (App. 14).

The statute defines a right-of-way as "the area on, below, or above a highway . . . other than a federal interstate highway; sidewalk; utility easement, . . . or other similar property." Wis. Stat. § 66.0414(1)(t). As the district court found, while the Public Plaza may not be "a highway or sidewalk *per se*, it is certainly 'other similar property' within the catchall portion of the definition." Decision and Order at 14 (App. 14). The Public Plaza is a "Pedestrian Mall," Lease § 4E(1) (Supp. App. 11), a term defined in Wisconsin law as "any street, land or appurtenant fixture designed primarily for the movement, safety, convenience and enjoyment of pedestrians," Wis. Stat. § 62.71(2)(*l*). That is "similar to" a sidewalk, which, under its ordinary meaning and Wisconsin law, is an area "constructed for use of pedestrians." *Id.* § 340.01(58).

Deer District concedes (at 23) that the "Plaza is used by pedestrians." Just because the Public Plaza is larger than a standard sidewalk or often crowded does not make it dissimilar. Notably, Deer District does not offer an alternative definition of "other similar property" that would exclude a pedestrian mall like the Public Plaza

but not be rendered surplusage. *See State v. Rector*, 990 N.W.2d 213, 217 (Wis. 2023) ("[S]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").

Because the Public Plaza is a right-of-way under both the "century-old definition of a right-of-way" and the "or other similar property" language in Wisconsin's Small Cell Statute, the district court correctly found that the City's permit denials violated state law. *See* Decision and Order at 16-17 (App. 16-17). The Small Cell Statute says that wireless carriers like Verizon "*shall have the right* to collocate small wireless facilities and construct, modify, maintain, and replace its own utility poles . . . along, across, upon, and under a right-of-way." Wis. Stat. § 66.0414(2)(e)1 (emphasis added). And the Statute also states that localities "*shall approve* a permit application *unless* it does not meet" certain criteria. *Id.* § 66.0414(3)(c)1.h (emphases added). As the court observed, the City "has not provided *any* evidence showing that the permit applications failed to meet any of" those criteria. Decision and Order at 17 (App. 17). And Deer District does not argue otherwise. Therefore, the court correctly found that the City's denial of Verizon's permit applications violated the Small Cell Statute.

### 2. Deer District's Argument That the Small Cell Statute Altered Its Rights Is Premised on Its Misinterpretation of the Lease

Deer District's arguments (at 16-21, 28-38) that the Small Cell Statute deprived it of property rights rest on its erroneous claim that the lease granted it the exclusive right to approve future small cell facilities on the Public Plaza. As shown above, Deer District is wrong. The lease never conveyed that right, so the Small Cell Statute could not have taken it away.[12] Therefore, there is no Taking[13] and no reason to certify any question about the meaning of the Small Cell Statute to the Wisconsin Supreme Court.[14]

---

[12] Deer District notes (at 8, 34) that the Small Cell Statute "disclaims any intention" to authorize the collocation of "small wireless facilities" on "private property without the consent of the property owner." Wis. Stat. § 66.0414(8). Deer District did not raise this argument below and thus waived it. *See Duncan Place*, 927 F.3d at 974. In any event, the Public Plaza is not private property, but a right-of-way. This provision does not apply.

[13] Both the United States and Wisconsin Constitutions bar the taking of "private property," by the government, without "just compensation." *Kreuziger v. Milwaukee Cnty.*, 60 F.4th 391, 394 (7th Cir. 2023). Therefore, Deer District's Taking's argument fails at the threshold, because Verizon's proposed locations for the small cells in the Public Plaza fall within a right-of-way, not on Deer District's privately held property.

[14] This Court need not wade into the certification inquiry, because the lease conveyed only the use of a right-of-way, and nothing in the

3. *The Court Need Not Resolve Whether the Small Cell Statute's Definition of Right-of-Way Is Narrower Than the Common-Law Definition*

Deer District argues (at 30) that the Small Cell Statute "abrogated the common law definition of right-of-way" by adopting a definition narrower than the common-law definition. The Court need not reach that question here. Deer District does not challenge the district court's conclusion that the Public Plaza is a right-of-way under the common law. *See* Decision and Order at 13-14, 16 (App. 13-14, 16). And, as shown above, the Public Plaza is a right-of-way under the Small Cell Statute's definition: "[I]t is certainly 'other similar property' within the catchall portion of the definition." *Id.* at 14 (App. 14). This case does not present facts where the two definitions lead to conflicting results.

If the Court reaches the question, however, it should find that the Small Cell Statute's definition does not abrogate the common-law definition. Under Wisconsin law, "[a] statute does not change the common law unless the legislative purpose to do so is *clearly expressed* in the language of the statute." *Fuchsgruber v. Custom Accessories, Inc.*,

---

Small Cell Statute alters the nature of this right-of-way. This Court should not certify to the Wisconsin Supreme Court an issue that amounts to a flawed contractual interpretation.

628 N.W.2d 833, 841 (Wis. 2001) (emphasis added). For the legislature to "accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory." *Id.*; *see also MBS–Certified Pub. Accts., LLC v. Wis. Bell, Inc.*, 809 N.W.2d 857, 871 (Wis. 2012) ("If the legislature wanted to abrogate the voluntary payment doctrine, certainly it would be required to do so using express language."). The Small Cell Statute lacks such language.

### 4. Deer District Waived Its Argument Based on Section 229.461, Which Lacks Merit

For the first time in this litigation, Deer District invokes Wis. Stat. § 229.461, which it claims (at 27) conflicts with the district court's interpretation of the Small Cell Statute. Because Deer District did not raise this argument below, it is waived. *See Duncan Place*, 927 F.3d at 974.

Deer District is also wrong to claim (at 27) that § 229.461 "statutorily mandate[s]" its "control over the Plaza." There is no conflict between § 229.461 and the Small Cell Statute. The former does not mention small cell wireless facilities. Instead, it broadly states that Deer District "shall" equip, maintain, operate, improve and repair the Public Plaza. Wis. Stat. § 229.461(3)(c). Deer District's "right" to

improve or maintain the Public Plaza — through actions like the installation of benches or aesthetic upgrades — is not inconsistent with the City's authority to grant permits for small cell facilities within the right-of-way. Deer District recognized as much in its December 22, 2015 "Cooperation, Contribution and Development Agreement" with the City, which provides that the City is not "obligate[d] . . . to vacate" the Public Plaza. *See* Cooperation Agreement § 8.4 (Supp. App. 61). Finally, if there were a conflict between the two statutes, the Small Cell Statute would control as the later-in-time enactment. *See*, *e.g.*, *Quinn v. Gates*, 575 F.3d 651, 655 (7th Cir. 2009) ("[A] later-enacted statute can confine the domain of an earlier one.").[15]

## CONCLUSION

This Court should affirm the district court's judgment.

---

[15] Deer District also misreads the "all revenues" language in Wis. Stat. § 229.461(3)(c), which refers only to revenues related to uses of the basketball arena (e.g., licensing and merchandising).

Dated:  May 17, 2024

Respectfully submitted,

/s/ *Jimmy A. Ruck*

Joseph S. Goode
John W. Halpin
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003
jgoode@llgmke.com
jhalpin@llgmke.com

Scott H. Angstreich
Jimmy A. Ruck
  *Counsel of Record*
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
sangstreich@kellogghansen.com
jruck@kellogghansen.com

*Counsel for Cellco Partnership*
*d/b/a Verizon Wireless*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Rule 32(c), the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief was prepared using a proportionally spaced typeface (Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 7,989 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare this brief.

/s/ *Jimmy A Ruck*
Jimmy A. Ruck

May 17, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 17, 2024, I caused to be filed

electronically the foregoing brief with the Clerk of the Court for the

United States Court of Appeals for the Seventh Circuit by using the

CM/ECF system. I certify that all participants in the case are registered

CM/ECF users and that service will be accomplished by the CM/ECF

system.

/s/ *Jimmy A. Ruck*
Jimmy A. Ruck